**ZERMAY LAW**
Zachary Z. Zermay (SBN 330221)
zach@zermaylaw.com
800 W. 1st St., Suite 1807
Los Angeles, California 90012
Telephone: (310) 752-9728
Facsimile: (844) 894-6204

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOY HWANG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GUNN COBLE LLP, a California limited liability partnership; BETH GUNN, an individual; CATHERINE COBLE, an individual; and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff Joy Hwang ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1. Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Gunn Coble LLP, a California limited liability partnership; Beth Gunn, an individual; Catherine Coble, an individual; and DOES 1 to 10, inclusive (collectively as "Defendants") in transmitting unsolicited, autodialed SMS or MMS text messages, *en masse*, to Plaintiff's cellular device and the cellular devices of numerous other individuals

nationwide, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA"). As described below, Defendants—a class action-focused law firm and its two managing partners—sent unsolicited auto-dialed text messages to thousands of individuals in an attempt to solicit them to (i) opt out of a class action that those individuals were already a part of, and (ii) become class members in Defendants' separate class action suit. Regardless of whether or not Defendants' sending those messages violated other laws, it certainly violated the TCPA: the text messages (i) were sent using an automatic telephone dialing system, (ii) included a link to a form Defendants created in order to assist in the opt-out process, (iii) were solicitations for Defendants' benefit (*e.g.*, the text messages encouraged the recipients to join Defendants' class action suit), and (iv) were sent without the TCPA's required prior express written consent.

## JURISDICTION AND VENUE

2. The Court has federal question jurisdiction because this case arises out of violations of federal law. *See* 28 U.S.C. § 1331 and 47 U.S.C. § 227; *see also Mims v. Arrow Fin Servs., LLC*, 565 U.S. 368, 378-79 (2012) (holding that federal courts have federal question jurisdiction in private TCPA cases).

3. Personal jurisdiction and venue are proper in this District. First, Plaintiff's claims arose in substantial part in this District because she received Defendants' unsolicited text messages on her cellular device while present in this District. Second, Defendants purposefully directed those messages into this District, with the intent to reach Plaintiff in this District. *See, e.g., Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 678 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) ("Where [defendant] knew or should have known that [plaintiff] is a Washington company, [defendant's] intentional acts were expressly aimed at the state of Washington."); *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, at *9 (N.D. Cal. Dec. 4, 2017) (in a TCPA case, noting that the defendant would be subject to personal jurisdiction if it had intentionally made unsolicited calls to the plaintiff's cell phone, which had a California area code).

4. More specifically, Defendants intentionally sent or transmitted, or intentionally caused to be sent or transmitted on their behalf, the same or substantially the same unsolicited text messages that Plaintiff received to thousands (if not more) of phone numbers, as part of a scheme to not only object to a class action lawsuit based out of this District, but to induce Plaintiff and other members of that class to join their own class action lawsuit.

5. Upon information and belief, Defendants intentionally sent text messages to thousands (if not more) of phone numbers belonging to residents of this District.

6. Defendants' text messages were expressly aimed at, and caused harm to, California residents, including residents of this District. Defendants' text messages are a nuisance, an invasion of privacy, and constitute an expense to everyone who received them, including Plaintiff.

7. ***Venue.*** Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391 because Defendants:

    a) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District;

    b) do substantial business within this District;

    c) are subject to personal jurisdiction in this District because they have availed themselves of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## PARTIES

8. Plaintiff is an individual and a "person" as defined by 47 U.S.C. § 153(39), and a citizen and resident of Alameda County, California.

9. Defendant Gunn Coble LLP is a "person" as defined by 47 U.S.C. § 153(39). On information and belief, Defendant Gunn Coble LLP maintains, and at all times mentioned herein maintained, its corporate headquarters in Burbank, California.

10. Defendant Beth Gunn is a "person" as defined by 47 U.S.C. § 153(39). On information and belief, Defendant Beth Gunn is a resident of Los Angeles County, California.

11. Defendant Catherine Coble is a "person" as defined by 47 U.S.C. § 153(39). On information and belief, Defendant Beth Gunn is a resident of Los Angeles County, California.

12. Defendant DOES 1 to 10 are alter egos, affiliates, related companies, and/or agents of Defendant Gunn Coble LLP, Defendant Beth Gunn, and Defendant Catherine Coble, and/or parties otherwise responsible for the actions and omissions alleged herein. At this time, Plaintiff does not know the true names and forms of Does 1 to 10 and therefore sues these defendants by fictitious names. Plaintiff alleges that these Doe defendants are responsible in some manner for the acts and omissions alleged herein and that Plaintiff's damages were caused by these Doe defendants. Once the true identities and forms of these Doe defendants are ascertained, Plaintiff will amend her Complaint accordingly.

13. Each of the Defendants named herein are and, at all material times, were the agents, subagents, servants, employees, representatives, and/or alter-egos of each other, and purported to act within the scope of such agency, service, employment or representation in performing the acts and omissions averred herein.

14. Each of the Defendants named herein acted in concert with each of the other Defendants as co-conspirators, agents, representatives, employees or servants and are therefore jointly and severally liable for the claims set forth herein, unless otherwise alleged.

## ALTER EGO

15. On information and belief, each of the Defendants were the alter ego of the remaining Defendants, and as alleged in this Complaint, were acting for their own benefit and/or the benefit of one or more of the remaining Defendants. On information and belief, there exists a unity of ownership and interest, between one or more of the Defendants, and one or more of the other Defendants, such that any individuality and separateness between

these Defendants has ceased, and the other Defendants, and each of them, were at all times relevant to Plaintiff's claim, the alter ego of and all other Defendants.

16. On information and belief, the Court's adherence to the fiction of the separate existence of any or all Defendants as entities distinct from the other Defendants would permit an abuse of the corporate privilege, would sanction fraud and/or promote injustice in that Defendants, and each of them, have defaulted on their individual and collective obligations to Plaintiff under federal law.

17. On information and belief, one or more of the Defendants were entities which are, and at all relevant times were, controlled, dominated, and operated by one or more of the other Defendants and in that the activities and business of the other Defendants were carried on without the holding of director's shareholders meetings and no records or minutes of any corporate proceedings were maintained.

18. On information and belief, one or more of the Defendants, and all other business entity Defendants are, and at all relevant times were, mere shells and shams without the requisite capital and assets. The other business entity Defendants are, and at all relevant times were, so inadequately capitalized that, compared with the business to be done by Defendants, capitalization was inadequate to do business properly and legally under federal law.

19. On information and belief, one or more of the Defendants, and all other business entity Defendants, are and at all relevant times were treated as piggy banks of one or more of the other Defendants, such that the other Defendants' funds were comingled with the funds of those Defendants.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

20. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, *inter alia*, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute

"advertisements" or "telemarketing," as defined by applicable regulations, the TCPA requires the "prior express written consent" of the called party before initiating such calls or texts using an autodialer or prerecorded voice.

21. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because receiving them is a greater nuisance and more invasive than live solicitation calls and they can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

22. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds - from coupons to phishing schemes - sent directly to user's cell phones."[1]

23. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. SMS and MMS text messages are received virtually anywhere in the world.

24. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a

---

[1] Amanda Lenhart, *Cell Phones and American Adults*, Pew Research Center (Sept. 2, 2010), https://www.pewresearch.org/internet/2010/09/02/cell-phones-and-american-adults/

usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

25. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

26. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (818) *** - 5346 (the "5346 Number"). The 5346 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(l)(A)(iii).

27. For over at least the past year, continuing through the present, Defendants transmitted or caused to be transmitted, by themselves or through an intermediary or intermediaries, one SMS or MMS text message to the 5346 Number without Plaintiff's prior express written consent, to wit, the text message which is depicted in the screenshot below, which was extracted from Plaintiff's cellular device:



28. The hyperlinked URL within Defendants' text messages, including the URL in the above-depicted text message, was leased or owned, and was operated and maintained, by Defendants or an agent or affiliate of Defendants.

29. The source of the unsolicited text message that Defendants transmitted to the 5346 Number was +1 (844) 925-2824, which, on information and belief, is a telephone number leased by Defendants or Defendants' agent(s) or affiliate(s) and is used for operating Defendants' text message marketing program.

30. Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she receives a text message, the unsolicited text message that Defendants transmitted to Plaintiff's cellular device was invasive and intruded upon Plaintiff's seclusion upon receipt. Plaintiff became distracted and aggravated as a result of receiving Defendants' unsolicited text message.

31. All telephone contact by Defendants or affiliates, subsidiaries, or agents of Defendants to Plaintiff's 5346 Number and to the numbers of the members of the Class defined below occurred using an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(b)(l)(A).

32. Defendants transmitted their text messages to the 5346 Number and to the numbers of the members of the Class defined below using an "automatic telephone dialing system" because their text messages were sent from a telephone number used to message consumers *en masse*; because Defendants' dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendants to send such messages have the capacity to store, produce, and dial random or sequential numbers, or to receive and store lists of telephone numbers and to then dial such numbers, *en masse*, in an automated fashion and without human intervention.

33. And in fact, Defendants actually transmitted the text messages at issue in this case to Plaintiff and all other unnamed Class members in an automated fashion and without

human intervention, with hardware and software that received and stored lists of telephone numbers to be dialed and then dialed such numbers automatically.

34. The complained of SMS and/or MMS text messages sent by Defendants to the 5346 Number and to the numbers of the members of the Class defined below constituted "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendants sent the messages in order to advertise and market their services, for the purpose of ultimately convincing Plaintiff and other Class members—who were members of another class action lawsuit which was in the process of settling—to object to that class settlement, leave that class, and join Defendants' class action lawsuit for Defendants' commercial profit.

35. Whether or not Defendants' text messages to Plaintiff and others similarly situated were sent via an ATDS, the unsolicited text messages were sent pursuant to a common telemarketing scheme for which the Defendants, or any agent or intermediary acting on its behalf, did not comply with, and thus violated the telephone solicitation restrictions in 47 C.F.R. § 64.1200(f).

36. Neither Plaintiff nor any members of the proposed Class provided their "prior express written consent" to Defendants or any affiliate, subsidiary, or agent of Defendants to permit Defendants to transmit text messages to the 5346 Number or to any of the Class's telephone numbers using an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(l)(A).

## CLASS ALLEGATIONS

37. Plaintiff brings this civil class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons within the United States to whom one or more text message(s) promoting Defendants' goods or services was sent to their cellular telephone number, between November 6, 2016 and the present, through the use of any automatic telephone dialing system by Defendants or an affiliate, subsidiary, or agent of

Defendants, without prior express written consent to be sent such text message(s).

38. Defendants, their employees, and agents are excluded from the Class.

39. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

40. Plaintiff and all Class members have been impacted and harmed by the acts of Defendants or their affiliates or subsidiaries.

41. This Class Action Complaint seeks injunctive relief and monetary damages.

42. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

43. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

44. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

45. <u>Typicality</u>. Plaintiff was sent at least one text message from Defendants without providing her "prior express written consent" to be sent such message(s) from Defendants within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members she seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendants' violations or misconduct as alleged herein.

46. <u>Adequacy</u>.  As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class.  Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

47. <u>Competency of Class Counsel</u>.  Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action.  Plaintiff's counsel is experienced in handling complex civil claims.

48. <u>Commonality and Predominance</u>.  There are well-defined common questions of fact and law that exist as to all members of the Class defined above and predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

 a) Whether Defendants or affiliates, subsidiaries, or agents of Defendants transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

 b) Whether such text messages were sent using an "automatic telephone dialing system";

 c) Whether Defendants or affiliates, subsidiaries, or agents of Defendants can meet their burden to show Defendants obtained "prior express written consent" (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

 d) Whether Defendants or affiliates, subsidiaries, or agents of Defendants should be enjoined from engaging in such conduct in the future.

49. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class members can be readily located and notified of this class action through Defendants' records and, if necessary, the records of cellular telephone providers.

50. Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendants.

51. Defendants or any affiliates, subsidiaries, or agents of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

52. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CLAIM FOR RELIEF

**Violations of the TCPA, 47 U.S.C. § 227(b)(3) & 47 U.S.C. § 227(b)(1)(A)
(On Behalf of Plaintiff and the Class Members Against All Defendants)**

53. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

54. The foregoing acts and omissions constitute violations of the TCPA by Defendants, including but not limited to violations of 47 U.S.C. § 227(b)(l).

55. As a result of Defendants' violations of the TCPA, Plaintiff and the Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3).

56. As a result of Defendants' violations of the TCPA, Plaintiff and the Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each violation of the TCPA (or $1,500.00 for any such violations committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

57. Plaintiff and the Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joy Hwang prays for relief and judgment in favor of herself and the Class as follows:

A. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any subclasses the Court

deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class.

      B.    An Order declaring Defendants' conduct, as alleged above, was in violation of the TCPA.

      C.    Injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) prohibiting such conduct and violations of the TCPA in the future;

      D.    Statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for Plaintiff and each member of the Class for each of Defendants' violations of 47 U.S.C. § 227(b)(l)(A) pursuant to 47 U.S.C. § 227(b)(3);

      E.    An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

      F.    Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: November 6, 2020                    Respectfully submitted,

                                      **ZERMAY LAW**

                                      By: *[signature]*
                                         Zachary Z. Zermay, Esq.